I call our next case for the day, Cyberworld Enterprises Technologies, Inc. v. Napolitano. I actually report, my name is Rob Costco, I'm the attorney for Napolitano. Just wait one minute, we have some people clearing out and we won't be able to give you our full attention. And counsel for appellate to get to the table. Okay. This court, my name is Rob Costco, I'm the attorney for the appellate side of the world. We'd like to reserve five minutes for the case. This is a very straightforward case, your honors. If the court decides there are no exceptions to Broad v. Pierce County, then if that happens, then the only issue is whether the maximum penalty under the statute, which is debarment of the company, is mandatory under strict liability theory for the most technical violation under the statute. We believe there are exceptions to Broad which I'm prepared to discuss, but I'd first like to discuss the issue of whether the administrative agency has any non-discretionary requirement to levy the maximum penalty, which in this case would put the company out of business because it's an H-1B dependent employer, if it can't file for H-1B, it goes out of business, unable to meet its contractual requirements for this technical violation. Has this year-long period been imposed as of yet? No, it can't be imposed until the case is final. It's not final until your honors rule. So we believe there are two issues on the penalty issue. One is the general issue of prostitutorial discretion, and two is the issue of statutory and regulatory construction. The officer points out that the statute says shall, right? Cutting things in discretion off. Yes, the statute does say shall, and I think there are a couple of issues on that. Number one issue is in other provisions where the statute says shall, it is not entailed to overrule the general concept that the prosecutor has discretion, whether to prosecute, and under Edgar v. Cheney, that's pretty clear. The next step is, well, if the prosecutor has the discretion not to prosecute at all, does the prosecutor have the discretion to assert a lesser penalty than the maximum penalty under the statute? Are there cases that help you in that regard? Yeah, I believe there is a Fourth Circuit case named Asika, which had a shall, the attorney general shall rescind adjustment of status to permanent resident of a foreign national, and the attorney general chose not to assert that maximum penalty, and that was the attorney general's decision not to assert the maximum penalty, and Asika in the Fourth Circuit was held to be a proper exercise of discretion. I'm not aware of a Third Circuit case that has dealt with that issue. I also think on the penalty issue, there's both a statutory and a regulatory construction issue here. At one level, we can say, well, the statute is very clear, but obviously, as a matter of statutory interpretation, the court should not presume that Congress intended an absurd result. Well, why would this be an absurd result? Under the statute, Section 212 N2E, Congress disallowed mandatory debarment, even where there was actual secondary displacement of U.S. workers, unless the employer knew or had reason to know of the displacement. Well, could Congress have intended to allow, to disallow mandatory debarment where there was actual displacement and no knowledge, but somehow allow mandatory debarment where there was no displacement and no knowledge? If Congress intended that, then we would not have won. But Congress said in F that there is a requirement to inquire. Yes, there's no question. And if that is violated, and that's an important aspect, right? There's no question that there's a requirement to inquire regarding secondary displacement. You self-reported that violation, right? Yes, we conceded that we did not inquire. So then the question becomes, if you go to the statute, it says, the Attorney General shall not approve petitions filed with respect to that employer during a period of at least one year. So it seems like the discretion that is given to the Secretary is, if you wish to go beyond one year. Well, I believe, Your Honor, that if Your Honors believe there is any ambiguity here on the knowledge issue, on the strict liability issue. Now, where is the ambiguity? Because that's where a SECA would help you. There's ambiguity, but I don't see it. Well, I don't believe in SECA there was really any ambiguity either, because the statute stated shall, just as the statute states shall here. The issue is whether Congress, whether there is an imputed requirement of knowledge before you issue a mandatory debarment. Did Congress intend to put companies out of business absent any knowledge requirement? And we believe that the overall statutory scheme can be read to require a knowledge requirement. In fact, the Labor Department regulations would seem to interpret it the same way, because you have the regulatory sections we cited in our brief in page 51, which is 655.810B1I. Now, there's a lot of confusion here, because the Labor Department cited to the wrong regulation, and we explained all that in the brief. But it's 655.810B1I which sets forth a debarment equity under the DOL's own regulations. Now, that section that allows for mandatory debarment only relates to, quote, pertaining to displacement of U.S. workers. There's very clearly a distinction in both the statute and the regulations between sections relating to displacement of U.S. workers and sections relating to failure to inquire about displacement of U.S. workers. But couldn't they have decided that the inquiry has to be made, and they're going to punish if you do not inquire? And, in fact, they can punish and perhaps should punish with a fine. But C-1 says if there is a failure to meet a condition of 1F, how can you construe that anyway, other than they intend that if there's a failure to meet a condition of 1F, this is what happens? I believe the answer is that the administrative regulation makes it clear that there is no, that the Department of Labor, under its regulations, is not imposing mandatory liability, and they have the authority to choose as a matter of prosecutorial discretion not to impose mandatory liability in cases where there's no displacement but there is simply a failure to inquire because the section of the regulations that talks about penalties for failure to make secondary displacement inquiries is 655.805A8, which does not provide for mandatory debarment for failure to make secondary displacement inquiries. I do believe that this falls under the general concept that an administrative agency, if the administrative agency has no prosecutorial discretion to choose not to levy the mandatory penalty under the statute, if a statute says, shall, and that means that that eliminates any discretion of a prosecutor, no matter how minor the violation, to choose to levy a lesser remedy, then that's, then we are, then my argument goes away on that point. It is a bit premature, Alex, you made your first argument as to whether we should follow Brock and his project, and then the second argument is that somehow they have, the Secretary has the discretion not to prosecute here, but the Secretary hasn't made that decision yet, so isn't this premature? No, I don't believe it is, Your Honor. There's two different issues. One is the Secretary has the discretion not to prosecute. I think we would agree with that, and I don't believe the issue is before the court that should be done. In fact, we're really asking this to hold that the Secretary does have the discretion to not prosecute. I believe the Secretary does have the discretion to not prosecute under Heckler v. Chaney and his progeny. However, I don't believe the issue is before the court that somehow the agency should have chosen not to prosecute. I agree with that. Okay, so then the next level of the issue is if the Secretary chooses to prosecute, does prosecutorial discretion also include the discretion to seek a lesser remedy? Because throughout this case, it's very clear that the Secretary would have chosen a lesser remedy under the facts of this case. To quote the government's brief, the facts of this case are that no U.S. worker or H-1B nonimmigrant was adversely affected by the failure to make the inquiry. Cyberwall cooperated in the investigation, and Cyberwall has taken actions to ensure future compliance. This is a case where after a 19-month investigation, the government found absolutely no U.S. worker prejudice. This is the most technical violation imaginable. All wages were proper. Everything was done exactly right. They failed to make a displacement inquiry when no one was displaced. Does that clear you up? Well, then Congress should change the regulation, should they not? Yes, I believe it would be terrific if they did change the regulation, but I believe under the regulation this is provided for, for the reasons I indicated, because the section of the regulations that deals with failure to make a displacement inquiry when there is no displacement. The existing regulations, holding aside that one-year issue, you can't dissent that the government actually did use their discretion, that it didn't tag you for any more than a year, and it seems to me the CMP, which I think we all agree is discretionary, is pretty light. The CMP is extremely light, but the issue is whether they had discretion. Yeah, and one year puts this company out of business. Plain and simple, the company has contracts that need to be fulfilled. This is a H-1B dependent agency that depends to fulfill its contracts under H-1B employees. If it can't bring in H-1B employees, it can't fulfill its contracts to go to that business. All right, we'll hear from you. You reserved a lot of time for Obama. Thank you. Thank you. May it please the Court, my name is Joan Brenner, and I represent the Secretary of Labor and the other federal defendants. I'm not exactly sure where to begin, but I do not think that we had discretion, that the Department of Labor had discretion not to prosecute in this case. Heckler v. Cheney is not applicable here, because Heckler v. Cheney applies where there is no law to apply, and here there is not only law, but it's extremely explicit law that says exactly what it intends, and it's not a technical violation, because it was important to Congress to enact these strict procedures because of the job shops that they were concerned with. But I think your opponent's argument is that isn't it draconian to impose a penalty for a failure to make a displacement inquiry or give the displacement warning and make an inquiry of employers when there is likely no displacement that ever occurred? This was a decision of Congress based on the concern of the job shops and its interest in making this a strict statute for employers who are in that business bringing these employees over and sending them out to work for other people. I understand. I mean, if the effect is poised, if it can be proven that there's no harm, why put them out of business? First of all, they will not be put out of business. I'm sure there will be an adverse effect. There's no doubt about it. They voluntarily took this on by agreeing to comply with all the H-1B provisions on the LCA. That was a test under oath that they would comply. So they voluntarily agreed that this is what they would do. And they also voluntarily came forward and said, you know, we just did it. We slipped to the cracks and we didn't do it. Fourteen times. I mean, it sounds like it wasn't part of something they did. Can you clarify that? Did you raise the issue and they conceded it or did they come forward without? Well, what happens is when the H-1B provisions are complaint-driven.  They went to investigate the complaint. Once they went to investigate the complaint, they investigated an employer. This was a complete investigation. They investigate the employer for all the H-1B employees, all kinds of violations, everything that could possibly have occurred. And I think they go back about a year from the time of the complaint, and then they go forward to whatever they found. So the employer is on notice of what the issue is and then concedes it. And the employer is on notice when they fill out the LCA, that this is something they have to do. It's in the LCA. Were they aware of the complaint or of this investigation? In the very beginning. And then after that they conceded that this is correct? Quite promptly, as soon as the finding, as soon as the investigator found that these LCAs were not, that they hadn't made the inquiry, they said, oh, that's right, we did not make the inquiry. There's no question that they did admit it readily and cooperated. Is this type of timeline common? I mean, it's really a dance in a fashion with government. Yes, it's quite long and everything. It's very, very difficult. The time, the 30 days is almost impossible, but the administrator, the wage-payer administrator tries to be as close as possible in most cases. But there are things that come up that, you know, the investigation is coming to. 19 months isn't even close to being close. No, it's a long time. Could they have brought an APA action? They could have brought an APA action. They actually could have gone to the Administrative Review Board and also asked for some interlocutory relief. They did nothing. Actually, there was no indication at the time that they were troubled by the delay. There was nothing at the time to indicate that they were troubled. But usually, if you're in their position, you don't want to use one of the systems. Yeah. Let us sleep and drag it out and just hope nothing happens. We can't do that because the statute really does not – the statute really says, do it fast. If nothing ever happened, it wouldn't be the first time that the government lets something slip through the cracks. Well, I'm not responsible for those changes. I can't address them, and I really don't want to try. Could you address the argument that Section 655, et cetera, concerns itself with displacement in such a way that we should not read 1E as permitting a failure condition for only a lack of inquiry? There's no place where it says that, and the regulations do not – the regulations exactly tell you what exactly the penalty is for each kind of violation, including the violations on the inquiry. There are sections that tell you exactly which one it is, and I think we have it in our briefs. Do you know of any example of any instances where the government has not issued a one-year debarment for similar? Absolutely not. Absolutely not. I think that we are – it's an extremely important thing, and we have made it a policy of not yielding on this particular matter. Is there anything in the record to that effect, either that they have or have not, as standard practice? No, I've had that in other cases. No. No, I know, but I mean, was that – The Department of Labor has always viewed this as something that must be done. You have a violation of the inquiry. A dependent employer violates the inquiry requirement. The dependent employer must be – the notice must be sent to the U.S. Attorney, or it's the Homeland Security there, to the department. And I might mention that the secretary is not the one who decides on whether it's one year or more. That is the role of the Department of Homeland Security. It goes to them to determine the length of the debarment. So the secretary recommends debarment. The secretary can recommend that one year is sufficient, and then the actual debarment is issued by the Department of Homeland Security. But it's usually only a year. Looking at this just from a general point of view, part of the argument is that you've got the word shall. You shall make a determination within 30 days, and you don't have to comply. In fact, if it's 60 days or, in this case, 19 months, that's okay. You don't have to comply. But you use the word shall with respect to them with regard to something that there's quite possibly never really been a displacement with anyone that they were to have warned, and yet you're saying shall, should, must apply. Yes. And, of course, that – As you win, tails they lose. Well, that's what cyberbullying is. But that's really where we rely on the Supreme Court precedent and the Brock v. Pierce County rulings, law, and all of the well-settled – and this court itself has relied on that particular precedent. Well, that's a good argument for Brock. I mean, the consequences of a – saying that the government doesn't have jurisdiction once it doesn't, combined with a shall here, could be, in some cases, catastrophic because there may be very rude societal – in Brock, you want to make sure that the government has the jurisdiction even though it didn't comply with the time limits within which it did that. And flip that around, the consequences to them for possibly no harm, and possibly zero harm, is they say they'll come. Now, if they say they won't be put out of business, you say they won't be put out of business, but they will certainly be affected adversely. Yes, they will because the statute does not require that all of the valid – that the valid LCAs are not invalidated for those employees who are currently employed. So if they have 50 employees who have two and a half years remaining on their LCA, they have 50 employees that they're going to be able to continue. I mean, it does not affect – They're saying in this case that they quite possibly can prove that there was not a single displacement of anybody with whom they dealt. There's no accusation or nothing in the record to indicate that there was any actual displacement. In fact, I don't know of any actual displacement in the cases generally, although that may happen in cases that don't get to us. What if it's clear to them, knowing the business of the hiring company, that they're going into kind of a new area, and this person who they're hiring is clearly not going to displace anybody because it's a new – they're embarking upon a new line of work. And they don't ask, but, you know, it's strict liability because they don't make the superfluous question of, and oh, by the way, I know you don't have any workers who do this, but is there a displacement here? Congress made the choice that this is what they have to do if they want to volunteer to hire H-1B employees. There's an issue about U.S. workers and bringing in immigrants, non-immigrants, as you know. But, I mean, it's strict liability. It's a strict – we don't call it that, but that's the result. That's the result. The company, you have to do it. There isn't any other argument. I wanted to address briefly his argument about knowledge, where the employees are going, where they're going. That really – and, you know, the question of whether the regs require a knowledge element, which the ALJ and every tribunal since then has said is not present, but it doesn't matter. They have to have knowledge. They're the employer. They have to file geography-specific LCAs. In other words, to have an LCA that's applicable to an employee, it has to say where that employee is going. I mean, if an employee is going to Boston, it's a different LCA from if the employee is going to Redland, Washington to work for Microsoft. So – Redland. Redland, didn't I say? Redland. Redland. You said Redland. Oh, Redland. I thought I had it right. To Microsoft. Microsoft is a big user of IT people and does hire, you know, H-1Bs. The prevailing wage that will be applicable to those areas will be different so that what will be the proper pay for the employee in Boston and the employee at Microsoft will be different. But it's cyber rule that's responsible for having the proper LCA. So they have to know that this is going to happen. Furthermore, they have a relationship with their vendors, and their vendors know that they're going to place these people very quickly, sometimes replaced for the same contract relationship to the next thing, so that there's no reason not. And so there's no reason why they can't follow the recommendations, which they now do, and seek the assurances or put it in their contracts and do all those kinds of things. Once they sought to become H-1B employers under the statute, they should have known that they have to do this, and they should have done it. There really isn't any reason for not doing it. It's not hard to do, and employers do it all the time, including in the cyber world. So I really just wanted to mention that one. I just take one moment to talk about ASEGA. ASEGA is inapplicable. The discretionary aspect of the case was not the one on which the ruling was. The ruling had to do with the non-discretionary. I mix up a bit. It's rescission and removal. Well, one of them was discretionary and one of them was not, and the court found that the one that was discretionary had discretion. The one that did not, did not. So that, you know, it didn't really make a difference in this case. I just don't know that there's anything that troubles you about any more of the case, to go back and reiterate. No further questions. Thank you very much. Counsel, question. Why would not your reading of 1F and E, why wouldn't it render F superfluous? I believe that. In other words, why wouldn't E suffice? I believe that E should suffice. I believe that the knowledge requirement should be imposed, should be presumed that Congress intended. So then F and E are the same? Yeah. I got mine all marked up here. Sure. So E deals with the issue of actual displacement. Oh, yeah, E deals with actual displacement, yes. And E imposes a knowledge requirement. F deals with the issue of failure to make displacement inquiries and doesn't by its terms impose a knowledge requirement. Well, it has a dual. It has unless they're required and has no knowledge. But aren't they different? Yes. And doesn't the provision C i say 1E or 1F, failure condition of both? Yes. I agree with that. All right, I just don't know how to read F the way you would like and have it be different from what E punishes. I think the only question is could Congress have intended the result that you need knowledge in order to be prosecuted under a mandatory penalty if there's actual displacement but you don't need knowledge to have a mandatory penalty if there's no displacement. Under F shouldn't they have said unless has inquired or has no knowledge? Wouldn't that be the logical? They should have said that, but to the extent that there's a question here, the Labor Department regulations resolve the question because the Labor Department regulations do not provide for mandatory debarment when there is no displacement. Give me a specific site because I'm not following that. Sure you are. The specific site 655.810B1I sets forth the debarment penalty. And that makes reference to violations pertaining to displacement of U.S. workers. And you're saying there is no duty to inquire. No, there is a duty to inquire. Section 655.738 covers all displacement-related violations including failures to meet displacement inquiries. Correct. There's no question that's a violation. The only question we're dealing with is whether the mandatory debarment for that violation exists. And for that, we have to look at the difference between 655.810B1I and 655.805A8. 655.805A8 deals with violations pertaining to, quote, failure to make secondary displacement inquiries. And that does not provide for mandatory debarment. The other section that I cited, 810B1I, only relates to violations pertaining to displacement. Now, the Administrative Review Board of the Labor Department basically said, well, a failure to make an inquiry about displacement is something pertaining to displacement. But, in fact, they're completely different. They're completely different statutory sections, and they're completely different regulatory sections. If I could deal with a couple of issues on rebuttal, first, the issue of quite possibly there's no displacement. In fact, it stipulates in this case there is no displacement. So that's not an issue. Second, the concept that five years for this case to work its way through the Labor Department is normal, with the company's fate hanging in limbo for five years, in my experience, that's not even close to normal. Thirdly, the concept judgment now that this company could have gone to court on an APA case. Think of yourself as a company where you know you've been meticulous. These are fairly complex rules. This company followed every rule, paid every worker the right amount. No one was displaced. It may be one of the few examples where a company, it's like being in a tax audit, and everything was perfect except one minor thing, and we were going to put you in jail. When this company got to court, nobody had done everything right. Yes, it failed to make displacement inquiry. They wanted the investigation 19 months before the investigation. Asking for its risk to be satisfied. I want to go to court to do what? I mean, yeah, if you want to penalize me some small amount of money, I admit I did it. I'm not sure how many they have at this point. Frankly, because of all this, they've been unable to make plans. They're in a situation where they haven't known for all these years if they're going to be in business tomorrow. And I know they have downsized significantly. I honestly do not know as of today how many employees they have. Also, Your Honor, we don't agree that somehow the DOL discretion goes over to DHS. Under our reading of the statutory scheme, if, in fact, the DOL sends this case as a mandatory one-year debarment to DHS, in fact, DHS will enforce that and will not somehow independently exercise discretion. Thank you. Thank you, counsel. The case is well argued. We'll take it under advisement.